Citation Nr: 1710358 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 10-03 296 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include depressive disorder, not otherwise specified (NOS), to include as secondary to service-connected bilateral hearing loss and/or tinnitus.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

K. Clark, Associate Counsel

INTRODUCTION

The Veteran served on active duty from December 1979 to October 1988.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in November 2009 by the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska, which, as relevant, denied service connection for an acquired psychiatric disorder, to include depressive disorder NOS, claimed as a mental health condition. Jurisdiction over the Veteran's claim was subsequently transferred to the RO in Denver, Colorado.

In August 2014, the Veteran testified at a hearing before the undersigned Veterans Law Judge sitting at the Denver RO. A transcript of the hearing is of record.

The Board remanded the instant matter in November 2014 and March 2016 for additional development. As will be discussed herein, the Board finds that the agency of original jurisdiction (AOJ) has substantially complied with the remand orders, and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems.


FINDING OF FACT

Clear and unmistakable evidence establishes that the Veteran's acquired psychiatric disorder, diagnosed as persistent depressive disorder, pre-existed service and was not aggravated by service, and is not caused or aggravated by his service-connected bilateral hearing loss and/or tinnitus.


CONCLUSION OF LAW

The criteria for service connection for an acquired psychiatric disorder, to include depressive disorder NOS, to include as secondary to service-connected bilateral hearing loss and/or tinnitus, have not been met. 38 U.S.C.A. §§ 1111, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.310 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

In the instant case, VA's duty to notify was satisfied by an August 2009 letter, sent prior to the issuance of the rating decision on appeal. See 38 U.S.C.A. §§ 5102, 5103, 5103A; 38 C.F.R. § 3.159; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

Here, the Board finds that all relevant facts have been properly developed and that all evidence necessary for equitable resolution of the issue decided herein has been obtained. The Veteran's service treatment records (STRs), service personnel records, and post-service VA treatment records have been obtained and considered. In this regard, the Board notes that the AOJ attempted to obtain the Veteran's Social Security Administration (SSA) records and private treatment records, to include records from Dr. M. that the Veteran identified at the August 2014 Board hearing. However, in December 2014, the SSA responded that the Veteran's records had been destroyed and the Veteran was informed of such response in a February 2015 letter. Furthermore, in a December 2014 letter, the AOJ requested that the Veteran provide necessary information and authorization to obtain the aforementioned private treatment records; however, the Veteran did not respond. In this regard, the duty to assist in the development and adjudication of a claim is not a one-way street. Wamhoff v. Brown, 8 Vet. App. 517, 522 (1996). If a Veteran wishes help, he cannot passively wait for it in circumstances where he may or should have evidence that is essential in obtaining the putative evidence. Wood v. Derwinski, 1 Vet. App. 190, 193, reconsideration denied, 1 Vet. App. 406 (1991) (per curiam). In addition, the Veteran has not identified any additional, outstanding records that have not been requested or obtained. Therefore, the Board finds that VA has satisfied its duty to assist in this regard.

Additionally, the Veteran was afforded VA examinations in September 2009 and February 2015. While the Board found in its March 2016 remand that the February 2015 opinion was inadequate to the extent that it failed to address whether the Veteran's acquired psychiatric disorder, to include depressive disorder NOS, clearly and unmistakably pre-existed his service and was not aggravated by service, the Board finds that the opinion subsequently obtained in September 2016 adequately addresses such matter. Furthermore, the Board finds that the opinions obtained from the February 2015 and September 2016 VA examiner are adequate to decide the claim as the examiner considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale, relying on and citing to the records reviewed. Moreover, the examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). In this regard, the Board is cognizant that the Veteran's representative argued in his February 2017 Appellant's Post-Remand Brief that such opinion was inadequate to decide the claim; however, as will be discussed in further detail below, the Board finds such allegations to be without merit. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination and opinion regarding the issue decided herein has been met. 

The Veteran also offered testimony before the undersigned Veterans Law Judge at a Board hearing in August 2014. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. 
§ 3.103(c)(2) requires that the Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

During the August 2014 hearing, the undersigned Veterans Law Judge noted the issue on appeal. Also, information was solicited regarding the Veteran's in-service experiences he alleges resulted in his acquired psychiatric disorder, the type and onset of symptoms, and his contention that his military service, or his service-connected bilateral hearing loss and/or tinnitus, caused or aggravated his acquired psychiatric disorder. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. See Bryant, 23 Vet. App. at 497. Moreover, as a result of the Veteran's testimony, the Board determined that further evidentiary development was necessary, to include obtaining identified medical records and SSA records, and obtaining etiological opinions. Under these circumstances, nothing gives rise to the possibility that evidence had been overlooked with regard to the Veteran's claim decided herein. As such, the Board finds that, consistent with Bryant, the undersigned Veterans Law Judge complied with the duties set forth in 38 C.F.R. § 3.103 (c)(2) and that the Board may proceed to adjudicate the claim based on the current record.

Furthermore, the Board finds that there has been substantial compliance with the Board's November 2014 and March 2016 remand directives and no further action in this regard is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268, 271 (1998)). Specifically, in November 2014, the matter was remanded in order to obtain service personnel records, SSA records, and private and VA treatment records, and afford the Veteran another VA examination. Thereafter, the Veteran's service personnel records and VA treatment records were obtained. However, as indicated previously, SSA and private treatment records, to include those from Dr. M., could not be obtained. Another VA examination was conducted in February 2015 so as to determine the nature and etiology of the Veteran's acquired psychiatric disorder. In March 2016, the Board remanded the matter in order to obtain an addendum opinion, which was provided in September 2016. Therefore, the Board finds that there has been substantial compliance with the Board's November 2014 and March 2016 remand directives, and no further action in this regard is necessary. 

In light of the foregoing, the Board finds that VA's duties to notify and assist have been satisfied. Thus, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

II. Analysis

The Veteran contends that, as a result of harsh in-service treatment by his superior officers, he developed an acquired psychiatric disorder. Specifically, he alleges that his superior officers were always yelling at him, which made him feel upset and angry. Furthermore, he alleges that his superiors did not take his in-service injuries seriously. Alternatively, the Veteran alleges that his service-connected bilateral hearing loss and tinnitus caused or aggravated his acquired psychiatric disorder beyond its natural progression by causing him to lose sleep, being moody and isolated, and to feel embarrassed at people's reaction to his hearing disability.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996).

When an issue is raised as to whether the disorder claimed by the Veteran pre-existed service, the governing law provides that every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities or disorders noted at the time of examination, acceptance, and enrollment into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that (1) an injury or disease existed before acceptance and enrollment into service (2) and was not aggravated by such service. See 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b); Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). 

In Smith v. Shinseki, 24 Vet. App. 40, 45 (2010), it was clarified that the presumption applies when a veteran has been "examined, accepted, and enrolled for service," and where that examination revealed no "defects, infirmities, or disorders." 38 U.S.C. § 1111. Plainly, the statute requires that there be an examination prior to entry into the period of service on which the claim is based. See Crowe v. Brown, 7 Vet. App. 238, 245 (1994) (holding that the presumption of sound condition "attaches only where there has been an induction examination in which the later-complained-of disability was not detected" (citing Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991)). Only such conditions as are recorded in examination reports are considered as noted. 38 C.F.R. § 3.304(b). History of pre-service existence of conditions recorded at the time of examination does not constitute a notation of such conditions but will be considered together with all other material evidence in determinations as to inception. 38 C.F.R. § 3.304(b)(1).

Therefore, where there is evidence showing that a disorder manifested or was incurred in service, and this disorder is not noted on the veteran's entrance examination report, this presumption of soundness operates to shield the veteran from any finding that the unnoted disease or injury preexisted service. See Gilbert v. Shinseki, 26 Vet. App. 48 (2012); Bagby, 1 Vet. App. at 227; see also 38 C.F.R. 
§ 3.304(b) ("[o]nly such conditions as are recorded in examination reports are considered as noted."). 

As noted, this presumption is only rebutted where the evidence clearly and unmistakably shows that the veteran's disability (1) existed before acceptance and enrollment into service and (2) was not aggravated by service. See Wagner, 370 F.3d at 1096; Bagby, 1 Vet. App. at 227. The two parts of this rebuttal standard are referred to as the "preexistence prong" and the "aggravation prong." Horn, 25 Vet. App. at 234.

A pre-existing disease or injury will be found to have been aggravated by service only if the evidence shows that the underlying disability underwent an increase in severity; the occurrence of symptoms, in the absence of an increase in the underlying severity, does not constitute aggravation of the disability. Davis v. Principi, 276 F.3d 1341, 1345 (Fed. Cir. 2002); 38 C.F.R. § 3.306(a). Evidence of the Veteran being asymptomatic on entry into service, with an exacerbation of symptoms during service, does not constitute evidence of aggravation. Green v. Derwinski, 1 Vet. App. 320, 323 (1991). If the disorder becomes worse during service and then improves due to in-service treatment to the point that it was no more disabling than it was at entrance into service, the disorder has not been aggravated by service. Verdon v. Brown, 8 Vet. App. 529 (1996).

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1137; 
38 C.F.R. § 3.309. Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). The use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

As relevant to the instant claim, the term "psychosis" includes brief psychotic disorder; delusional disorder; psychotic disorder due to another medical condition; other specified schizophrenia spectrum and other psychotic disorder; schizoaffective disorder; schizophrenia; schizophreniform disorder; and substance/medication-induced psychotic disorder. 38 C.F.R. § 3.384. However, the Veteran's acquired psychiatric disorder, to include depressive disorder NOS, is not recognized as a chronic disease pursuant to VA regulations and he has not been diagnosed with a psychosis as defined by VA regulations; consequently, the laws and regulations governing presumptive service connection, to include on the basis of a continuity of symptomatology, are inapplicable. 

Service connection may also be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Service connection may not be established on the basis of aggravation without establishing a pre-aggravation baseline level of disability and comparing it to the current level of disability. 38 C.F.R. § 3.310(b).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

As an initial matter, the Board finds that the competent evidence of record confirms a current diagnosis of an acquired psychiatric disorder. Specifically, the August 2009 VA examiner noted that the Veteran had a diagnosis of depressive disorder NOS and the September 2015 VA examiner diagnosed the Veteran with persistent depressive disorder as a continuation of the previously diagnosed depressive disorder NOS. Thus, the Veteran meets the first requirement to establish service connection, i.e., evidence of a current disability. 

The Veteran's STRs reveal that he reported that he had or was then having frequent trouble sleeping and depression or excessive worry in his December 1979 report of medical history (which appears to be misdated as December 1977). In this regard, the December 1979 examiner noted that the Veteran worried about his mother and that he was unable to sleep in different beds. Such report also noted that the Veteran denied prior psychiatric treatment. In the Veteran's December 1979 report of medical examination, no psychiatric disorder was noted and his psychiatric clinical evaluation was checked normal. The Veteran was found to be qualified for enlistment. Furthermore, in August 1988, the Veteran elected not to complete a separation examination. In this regard, while his representative argued in his February 2017 Post-Remand Appellant's Brief that the Veteran would have disclosed his mental health condition as associated with tinnitus if he had been provided with a separation examination, there is simply no evidence that such is the case. In this regard, while the Veteran reported tinnitus since 1982 at his May 2005 VA examination, his STRs dated prior to 1988 are negative for any such complaints. Furthermore, as the Veteran was not formally diagnosed with a mental health disorder until 2000, it is unclear how he would be able to report it in 1988. Therefore, the Board finds the Veteran's representative's argument in such regard to be without merit.

The Veteran's post-service treatment records reflect ongoing treatment for depression/depressive disorder NOS beginning in approximately 2004; however, the records reflect treatment for depression beginning in 2000. He was afforded a VA examination in connection with his claim on appeal in September 2009. At such time, the examiner noted the Veteran's reports of childhood physical abuse by his stepfather, emotional abuse by adults, and being taunted while at school. The examiner also noted that the Veteran received VA treatment for his acquired psychiatric disorder in approximately 2000 and that he was currently on anti-depressants for such condition. On examination, the Veteran complained of anger, depressed mood, poor sleep, and pain due to his service-connected tinnitus, and a lack of motivation. The examiner further noted that the Veteran complained of frequent poor treatment by others and demonstrated externalization of blame, self-critical remarks, anger related to his childhood mistreatment, and perceived continuing mistreatment by others throughout his life. 

The examiner diagnosed the Veteran with depressive disorder NOS and opined that such disorder was less likely as not permanently aggravated by his service-connected hearing loss and/or his tinnitus. In this regard, the examiner stated that, despite the Veteran's complaints about his various conditions and life circumstances, he made no reference to any connection between his service-connected bilateral hearing loss and his unhappiness or symptoms of depression. However, the examiner acknowledged the Veteran's reference to his service-connected tinnitus as contributing to his sleep loss. Nonetheless, the examiner opined that it was far more likely that the Veteran's depression was attributable to his abusive childhood experiences and resulting developmental difficulties characterized as self-defeating and self-critical features, such as externalizing of blame and poor self-image. Furthermore, the examiner also opined that the Veteran's acquired psychiatric disorder was far more likely attributable to his chronic pain in his neck and shoulder. 

In its November 2014 remand, the Board noted that the September 2009 examiner did not provide an opinion on whether the Veteran's in-service treatment resulted in his acquired psychiatric disorder or whether his service-connected bilateral hearing loss and/or tinnitus caused, rather than aggravated, such disorder. Pursuant to the November 2014 remand, the Veteran was afforded another VA examination in February 2015. Such examiner noted the review of the Veteran's claims file, to include VA treatment records that indicated the Veteran had prior treatment for his acquired psychiatric disorder and that such disorder remained stable on medication. The examiner also noted that the Veteran denied seeking behavioral health treatment prior to his military service and that he first sought such treatment in 2000, when he started anti-depressants. The examiner further noted that the Veteran stopped taking medication in early 2013 and was not currently taking psychiatric medications, or seeking counseling. 

On examination, the Veteran reported that he had difficulty falling asleep as well as frequent awakening due to his back pain, tinnitus, and various other musculoskeletal pains. When asked about his depression, the Veteran stated that it started in childhood and was related to his abuse and being bullied. He also stated that although he felt his depression had waxed and waned throughout his life, it was nevertheless a persistent fixture before, during, and after service. In this regard, he complained that, during service, he was always selected for "the crappiest jobs" and that he was berated by his fellow service members and officers for his injury after falling from a tank. Finally, the examiner noted that, at no point during the examination did the Veteran mention his hearing difficulties in relation to his depression. The examiner diagnosed the Veteran with persistent depressive disorder as a continuation of the depressive disorder NOS diagnosed at the September 2009 VA examination. 

Following a review of the medical evidence of record, as well as an interview with the Veteran discussing his relevant psychiatric history, the February 2015 examiner opined that it was less than likely as not that the Veteran's acquired psychiatric disorder was related to his military service, including the harsh treatment he received from his superior officers. The examiner reasoned that, although the Veteran had significant depression issues, those issues were more likely related to his early childhood abuse along with a lifelong pattern of feeling undervalued. The examiner also noted the Veteran's statement that this pattern and the associated depression began prior to the Veteran's military service. The examiner further noted that the Veteran's lifelong issue of feeling rejected and the resulting depression would have most likely remained unchanged even if he had never served in the military. Consequently, the examiner concluded that the Veteran's military service could not be identified as the proximate cause for his acquired psychiatric disorder. Additionally, the examiner stated that the Veteran's acquired psychiatric disorder was related to his various musculoskeletal pain issues, which had nothing to do with the Veteran's harsh treatment by superior officers in the military. 

Furthermore, the February 2015 examiner opined that it was less than likely as not that the Veteran's acquired psychiatric disorder was caused or aggravated by his service-connected bilateral hearing loss and/or tinnitus. The examiner reasoned that, although it was understandable that tinnitus affected the Veteran's sleep, during the examination, the Veteran did not identify tinnitus, hearing loss, or a lack of sleep due to his tinnitus as a significant source of his depression. Instead, the Veteran readily identified other factors, as discussed above, as the sources for his acquired psychiatric disorder. Finally, the examiner noted that there was no medical documentation of the Veteran's hearing disabilities causing significant and permanent aggravation to his acquired psychiatric disorder. 

Thereafter, in its March 2016 remand, the Board found that an addendum opinion was needed. In this regard, the Board noted that the September 2015 examiner indicated that the Veteran suffered from a pre-existing acquired psychiatric disorder, but failed to address whether such disorder clearly and unmistakably pre-existed service and was not aggravated by service. Specifically, since there was no psychiatric disorder noted on the Veteran's December 1979 medical reports, meaning he was presumed sound upon entrance, an opinion was necessary to address whether his currently diagnosed acquired psychiatric disorder, diagnosed as persistent depressive disorder, clearly and unmistakably pre-existed service and was not aggravated by service.

Accordingly, an addendum opinion was provided in September 2016 by the same examiner who conducted the Veteran's February 2015 VA examination. In his addendum opinion, the examiner opined that the Veteran's acquired psychiatric disorder, diagnosed as persistent depressive disorder, clearly and unmistakably pre-existed his active duty service. In this regard, the examiner reasoned that the evidence of the Veteran's own report of when his acquired psychiatric disorder started and the circumstances under which such arose, indicated that the Veteran's acquired psychiatric disorder, diagnosed as persistent depressive disorder, existed prior to service. Specifically, the examiner reasoned that depression is a very personal and subjective condition that lacks lab tests or radiographic films to demonstrate its presence and that the Veteran's diagnosis of persistent depressive disorder was based entirely on the Veteran's subjective factors; therefore, the Veteran's own description of the symptoms and their etiology would be the primary medical evidence used in evaluation of the condition. 

To support his rationale, the examiner noted that the Veteran described the onset of his depression in childhood, arising as the result of being abused and bullied, with continuation of the depression throughout his life due to recurrent perceptions of being under-valued. The examiner further noted that the Veteran cited several significant events in his early upbringing that molded his self-perception such as being bullied, physical and sexual abuse by his stepfather, academic failure in school, and being rejected by the Job Corps. The examiner explained that these types of chronic and persistent stresses during the formative years have a strong correlation with the formation of self-image and that medically, it made sense that his low level depression started prior to military service even if it had not been severe enough to warrant mention on his entrance examination. Furthermore, the examiner reasoned that none of the events the Veteran reported to have occurred during his military service would be more likely to result in a persistent negative self-image than the events that occurred during his pre-military years. Specifically, the examiner noted that in order for the relatively innocuous in-service events to have had any real impact on the Veteran, the underlying issue with self-esteem would have needed to be present already as a result of his pre-military experiences. 

Additionally, the examiner opined that there was clear and unmistakable evidence that the Veteran's pre-existing acquired psychiatric disorder, diagnosed as persistent depressive disorder, did not undergo an increase in the underlying pathology during service. In support thereof, the examiner reasoned that the Veteran did not seek treatment for his depression until the year 2000 and that there was no mention of depression issues during the Veteran's military service. The examiner also explained that the only worsening mentioned in any of the available clinical records was in the context of unemployment in 2005 and that such records did not show that the Veteran was treated for his acquired psychiatric disorder during service or a decade afterward. The examiner further noted that, during service, the Veteran was not hospitalized, did not report primary or secondary symptoms of depression, did not use psychiatric medication, and did not see a counselor. 

The examiner also reasoned that the Veteran's in-service events such as being yelled at by his superiors and called names after seeking medical care after his tank incident, would not be expected to cause significant and lasting depression or significant worsening of depression, even in someone with pre-existing self-esteem issues. The examiner acknowledged that how the Veteran was treated after his in-service tank incident could possibly cause a temporary flare in his depression and that such was likely what the Veteran was referring to when he asserted that the tank incident caused his depression. However, the examiner explained that such event was not the sort of event that would leave anyone with lasting emotional scars. Moreover, the examiner addressed the Veteran's contention that his acquired psychiatric disorder was due to his hearing disabilities. However, the examiner noted that there was no medical evidence to support such contention and that it was inconsistent with the reports the Veteran made at his prior VA examinations. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection for an acquired psychiatric disorder, to include depressive disorder NOS, to include as secondary to his service-connected bilateral hearing loss and/or tinnitus. In this regard, the Board places great weight on the February 2015 and September 2016 opinions that concluded that there was clear and unmistakable evidence that the Veteran's acquired psychiatric disorder, diagnosed as persistent depressive disorder, pre-existed his service and was not aggravated by his service, and was not caused or aggravated by his service-connected bilateral hearing loss and/or tinnitus. The Board finds that such opinions clearly reflects consideration of the Veteran's medical records and provides a complete rationale supported by the evidence of record. Furthermore, the opinions offer clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez, supra; Stefl, supra. Therefore, the Board accords great probative weight to the February 2015 and September 2016 opinions. 

The Board notes that, in his December 2009 notice of disagreement, the Veteran contended that the September 2009 VA examination was inadequate due to his belief that the VA examiner did not give him a comprehensive evaluation as he alleged that the examination was only 5 to 10 minutes long. However, the Board has not relied upon the September 2009 VA examination in deciding the Veteran's claim.

Furthermore, in his February 2017 Appellant's Post-Remand Brief, the Veteran's representative alleged that VA failed to provide an adequate medical opinion that could be justifiably relied upon to decide the Veteran's claim. However, he did not specify the particular aspects of the February 2015 and/or September 2016 opinions that were inadequate. In this regard, a VA examiner is presumed to have properly discharged his duties as a health professional (presumption of regularity) in a review of the record, in interviewing the Veteran, and supporting his opinion with medical analysis applied to the significant facts of the case. See Rizzo v. Shinseki, 580 F.3d 1288, 1292 (Fed Cir. 2009) (applying the presumption of regularity to VA medical examiners in the discharge of their regular duties). The presumption of regularity is only rebuttable by clear evidence to the contrary. Miley v. Principi, 366 F.3d 1343, 1347 (Fed. Cir. 2004). Here, the Veteran's representative has not demonstrated that the VA examiner was unaware of any significant fact in this case or provided an insufficient rationale, or introduced any evidence that shows a lack of impartiality. Thus, the Veteran has not met his burden to show that the February 2015 and September 2016 VA opinions are inadequate.

Moreover, even though the Veteran's acquired psychiatric disorder, diagnosed as persistent depressive disorder, was not noted upon entrance to service, the evidence, namely the September 2016 opinion coupled with the Veteran's statements to the examiner, clearly and unmistakably demonstrates that such disorder pre-existed his military service and was not aggravated during service. Thus, absent competent evidence to the contrary, the Board must find that the presumption of soundness has been rebutted and that there is clear and unmistakable evidence that the Veteran's acquired psychiatric disorder, diagnosed as persistent depressive disorder, pre-existed his service and was not aggravated by service. See Horn, supra. 

Furthermore, the February 2015 examiner found that there was no available evidence to support that the Veteran's acquired psychiatric disorder was caused by or aggravated by his service-connected bilateral hearing loss and/or tinnitus. Specifically, the Veteran did not identify tinnitus, hearing loss, or a lack of sleep due to his tinnitus as a significant source of his depression and there is nothing in the evidence of record to suggest otherwise. Thus, the evidence of record establishes that service connection for his acquired psychiatric disorder, to include depressive disorder NOS, is not warranted on a secondary basis due to his service-connected bilateral hearing loss and/or tinnitus.

In reaching such conclusions, the Board has considered the Veteran's lay statements that his acquired psychiatric disorder, to include depressive disorder NOS, is related to the aforementioned in-service experiences or, in the alternative, that such disorder is caused or aggravated by his service-connected hearing disabilities. However, the Board finds that the question regarding the potential relationship between the Veteran's acquired psychiatric disorder and any instance of his service or his service-connected hearing disabilities, to be complex in nature. Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). 

In this regard, while the Veteran is competent to describe his in-service experiences and current psychiatric symptomatology, the Board accords his statements regarding the causation or aggravation of such disorder little probative value as he is not competent to opine on such a complex medical question. Specifically, where the determinative issue is one of medical causation or aggravation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137 (1994). The question of causation or aggravation of his acquired psychiatric disorder involves a medical subject concerning an internal psychiatric process extending beyond an immediately observable cause-and-effect relationship in that such requires knowledge of the psyche. Therefore, as the Veteran does not have the appropriate medical training and expertise to determine the causation or aggravation of his acquired psychiatric disorder, to include depressive disorder NOS, the lay assertions in this regard have no probative value. 

Based on the foregoing, the Board finds that service connection for an acquired psychiatric disorder, to include depressive disorder NOS, to include as secondary to the Veteran's service-connected bilateral hearing loss and/or tinnitus, is not warranted. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.


ORDER

Service connection for an acquired psychiatric disorder, to include depressive disorder NOS, to include as secondary to service-connected bilateral hearing loss and/or tinnitus, is denied.



____________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs